Judge Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff <br><br> v. <br><br> COLIN HUGH MARTIN, <br> Defendant. | NO. CR08-244RSL <br><br> UNITED STATES' <br> SENTENCING MEMORANDUM <br> Sentencing Date: June 29, 2018 |

The United States of America, by Annette L. Hayes, United States Attorney for the Western District of Washington, and Sarah Y. Vogel, Assistant United States Attorney, files this Memorandum in anticipation of the sentencing hearing for Defendant Colin Martin following his guilty plea to Conspiracy to Possess with Intent to Distribute Controlled Substances.

**A. Introduction and Summary**

Colin Martin was a leader of an international conspiracy designed to generate huge profits for himself and his criminal partners by smuggling cocaine into Canada from the United States and smuggling marijuana and MDMA from Canada into the United States. Martin did not risk arrest by personally smuggling the drugs. Rather, he (and his wife, J. C.) set up a fake timber company and then spent huge amounts of money leasing and

United States Sentencing Memorandum
US v. Colin Martin; CR08-244RSL - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

purchasing helicopters in the name of that company, which Martin then hired others to fly across the border in both directions loaded with illegal drugs.  Other workers loaded and unloaded the drugs from Martin's helicopters, and transported them to their ultimate destination for re-distribution.  Many of these low-level workers, at least two of whom are – like Martin – of native heritage, eventually were caught by law enforcement, and spent long periods of time in jail for their criminal conduct committed on behalf of Martin and the other leaders of this organization.  One pilot committed suicide shortly after being arrested for flying Martin's smuggled helicopter load.  Martin, in contrast, evaded extradition for years and only now, a decade later, is facing this Court for sentencing.

While the exact length of time Martin participated in this criminal scheme is unknown to the United States, we do know that Martin obtained his first helicopter, for which he reportedly paid $900,000, in late 2007.  We also know that Martin's wife, in her capacity as President of Gorge Timber Corporation, signed a lease dated January 31, 2008, for a second helicopter, a Eurocopter EC 120.  Martin told the owner of this helicopter that Gorge Timber intended to use it to spot downed timber to salvage and sell.  The owner provided law enforcement agents with a copy of the lease signed by J.C.  The owner stated Martin paid him $12,000 US per month, plus $300 US per trip.  The EC 120 owner visited the Malakwa home of Martin and J.C., and observed an aircraft hangar on the property.  The EC 120 owner eventually terminated the lease with Gorge Timber in mid-2008, after learning that the pilot Martin had hired to fly it was not properly insured.  Records from the B.C. Ministry of Forests and Range reveal that Gorge Timber Corporation was never issued any logging permits that would have allowed it to salvage timber.

As Martin admitted in his Plea Agreement, in 2009 agents successfully seized several loads of marijuana and cocaine being smuggled or transported by this conspiracy.  For example, in February of 2009, Martin coordinated the attempted smuggling, via a different Bell 206 helicopter also leased by Martin in the name of Gorge Timber, of

United States Sentencing Memorandum
US v. Colin Martin; CR08-244RSL - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

83 kilograms of cocaine and 190 kilograms of marijuana which were seized in the United States. *See* Dkt. 183, ¶10.b.-c. The seized loads described in the Plea Agreement, however, represent only a fraction of the drug quantities actually smuggled by Martin and his partners in furtherance of the conspiracy. As the Plea Agreement explicitly recognizes, the exact quantities of unseized drugs that were smuggled as part of this conspiracy remain unknown. *See* Dkt. 183, ¶10.f. According to at least one conspirator, he personally participated in approximately 20 loads with Martin, known to the conspirator only by his Blackberry nickname "Rolex," which the conspirator estimated being as large as up to 600 pounds of marijuana and up to 80 pounds of cocaine, each. Another conspirator identified a photograph of the EC 120 (leased by Gorge Timber, through Martin and his wife), and estimated the organization had used that helicopter about three times every two weeks, and that the helicopter could handle loads of up to 300 kilograms of cocaine, 500,000 MDMA tablets, or 600 pounds of marijuana.

The extent of the profits generated by this criminal conduct, ongoing for years, are also largely unknown and none of the proceeds were seized by the U.S. government. However, the extent of the profits may be estimated based on the operating costs involved. For example, Martin and his wife appear to have spent at least $1 million to lease or buy the three helicopters known to have been involved in the conspiracy. In addition, Martin and his wife built a "palatial country estate" in Malakwa, originally in his wife's name but then transferred to another owner from whom Martin and his wife claimed to rent the property, which was reportedly listed for sale in 2011 for $1.75 million. (Photo and quote from Vancouver Sun, "Court freezes sale of $1.75 million home once owned by drug smuggler," January 27, 2011; http://www.vancouversun.com/news/Court+freezes+sale+million+home+once+owned+drug+smuggler/4175405/story.html ). The source of funds for building this home remain unknown.

United States Sentencing Memorandum
US v. Colin Martin; CR08-244RSL - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



Despite the fact that some of the conspirators were arrested and indicted in 2008, Martin's and the rest of the conspiracy's ongoing illegal conduct did not finally end until late 2009. Martin was indicted in December of 2009. That indictment was possible when the investigating agents were finally able to confirm that the person directing the helicopter transportation, who used the code name "Rolex" in Blackberry communications, was Colin Martin. That confirmation came after Martin initiated contact with DEA by calling the Vancouver DEA Office in September of 2009. Over the next three months, Martin then engaged in an ensuing serial text message conversation with a DEA agent. In these preserved text messages, which were essential evidence establishing Martin's identity, Martin admitted his involvement in the conspiracy. As part of that conversation, Martin attempted to convince the DEA agent to break the law by allowing Martin to continue to operate his drug transportation network.[1]

---

[1] In one of many media interviews Martin gave during which he admitted his involvement in drug trafficking, he suggested that his intention in these conversations was to demonstrate to CBC reporters the DEA's willingness to "get in bed with the bad guys." (March 10, 2010, Eagle Valley News).

United States Sentencing Memorandum
US v. Colin Martin; CR08-244RSL - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Thereafter, Martin fought extradition on all available legal, factual, and equitable grounds, before the United States was finally able to secure his presence in early 2018 to face these charges. In particular, Martin argued that the allegation in the Indictment about his contacting the DEA should preclude extradition. According to news reports, the appellate judge in Canada denied this argument, noting that Martin jeopardized his own safety by his own actions, and that he had commented publicly to the media about his involvement in drug trafficking. (Kelowna Capital News, "Accused Shuswap drug smuggler faces extradition to U.S.," June 16, 2017, https://www.kelownacapnews.com/news/accused-shuswap-drug-smuggler-faces-extradition-to-u-s/ ). In the meantime, in 2010 Martin committed his fourth drug-related criminal offense in British Columbia, Production of Marijuana and Possession of Marijuana for the purposes of Trafficking, for which he was sentenced in 2014 to 24 months' custody. PSR ¶ 40. Martin's wife was originally a charged co-defendant in that case, but it appears those charges were abandoned.

As discussed in more depth below, Martin's applicable Sentencing Guidelines range as calculated by Probation (incorporating the 2014 drug quantity reductions) – based only on the seized drugs – is 235 to 293 months' imprisonment, with an applicable statutory mandatory minimum of 60 months' imprisonment. The United States has agreed not to recommend any term over 120 months' imprisonment. Defendant seeks a mandatory minimum sentence of 60 months, primarily citing his abusive and chaotic childhood, his indigenous heritage, difficult conditions of incarceration in Canada prior to extradition, his newfound law abiding character, and his extraordinary family responsibilities. Probation recommends a sentence of 84 months, acknowledging that Martin played a significant role as a leader in the very large conspiracy, that Martin is a repeat offender, and that other participants have been sentenced to significant terms of imprisonment, including up to 120 months' imprisonment.

For the reasons outlined in more detail below, the United States continues to believe that a sentence of 120 months would be appropriate for Martin. However, after

United States Sentencing Memorandum
US v. Colin Martin; CR08-244RSL - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

reflection upon the mitigating information provided, but still giving to consideration to all of the aggravating circumstances – including the vast quantity of drugs and money involved, his history of continuing to commit drug offenses both before and after the conspiracy in this case, the severe outcome Martin's conduct caused for many of the organization's low-level workers, and the need to avoid sentencing disparity – the United States respectfully requests the Court impose a term of 96 months' imprisonment.

**B.      Procedural History**

The procedural history of this case is accurately set forth in Paragraphs 1 through 17 of the PSR. Of note, the first defendants were charged in this investigation over ten years ago: Joseph Curry in 2007 (EDWA) and Wayne Coates in 2008 (WDWA). Ross Legge and Leonard Ferris were arrested and charged in 2009 (EDWA). The first defendants charged in this same case were indicted by the grand jury in July of 2008. CR08-244RSL, Dkt. 1. James was arrested in 2008, and Snow was arrested in 2009. Serrano eventually consented to extradition and appeared in the United States in 2013. Sean Doak was extradited in 2015. His brother, Christopher Doak remains a fugitive on charges filed in the Central District of California in 2010. Martin was extradited in January, 2018 and, a few months later, the final defendant, James Cameron, also was extradited and is currently still pending trial in this District. As reflected in the PSR, Canada has verified that Martin served several periods of detention in connection with the pending extradition. PSR ¶ 2-3.

Following his long-delayed appearance, Martin thereafter timely entered a guilty plea to Conspiracy to Possess with Intent to Distribute Controlled Substances, as charged in Count 1, but to a lesser included offense, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846.

In his Plea Agreement, the parties entered into the following Sentencing Guidelines stipulations:

      a.      Base Offense Level 34, corresponding to relevant conduct involving at least 103 kilograms of cocaine, and 269 kilograms of marijuana

United States Sentencing Memorandum
US v. Colin Martin; CR08-244RSL - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(equivalent after conversion to 20,869 total kilograms of marijuana), pursuant to USSG §2D1.1.

      b.    A two-level upward adjustment because Defendant unlawfully imported and exported controlled substances under circumstances in which an aircraft other than a regularly scheduled commercial air carrier was used to import or export the controlled substance, pursuant to USSG §2D1.1(b)(3).

      c.    At least a two level enhancement for role as a leader or organizer, pursuant to USSG §3B1.1.

      d.    A two level upward adjustment because Defendant was a leader/organizer and was directly involved in the importation of a controlled substance, pursuant to USSG §2D1.1(b)(15)(C).

      e.    Full credit for acceptance of responsibility, subject to the conditions discussed in the paragraph entitled Acceptance of Responsibility, below.

      f.    These stipulations result in a Total Adjusted Offense Level of 37.

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

Dkt. 138, Plea Agr. ¶ 11. The Plea Agreement also provides:

**Recommendation Regarding Imprisonment**. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the United States agrees to recommend that the appropriate term of imprisonment to be imposed by the Court at the time of sentencing is a term of not more than 120 months. Defendant understands that this recommendation is not binding on the Court and the Court may reject the recommendation of either party and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that he cannot withdraw his guilty plea simply because of the sentence imposed by the district court. Except as otherwise provided in this plea agreement, the parties are free to present arguments are regarding any other aspect of sentencing.

United States Sentencing Memorandum
US v. Colin Martin; CR08-244RSL - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Plea Agr. ¶ 13. The Plea Agreement includes a limited waiver of appeal. Plea Agr. ¶ 18. The United States requests the Court advise Defendant appropriately of his remaining rights, following imposition of sentence.

**C.     Statutory Maximum and Minimum**

The statutory maximum for the offense of conviction is 40 years' imprisonment, and there is a five-year mandatory minimum. This minimum is applicable to Defendant Martin because he does not qualify for "safety-valve," pursuant to 18 U.S.C. § 3553(f) and USSG § 5C1.2. *See* PSR ¶ 28. A term of supervised release of four years is mandatory, even if probably meaningless under these circumstances, and the maximum fine is $2 million. 21 U.S.C. § 841(b)(1)(B) (2009). Defendant also is responsible for the mandatory Special Assessment of $100.

**D.     Sentencing Guidelines Range**

The Presentence Report (PSR), prepared by the Probation Officer assigned to this case, revised June 14, 2018, accurately summarizes the offense conduct and correctly calculates Martin's Sentencing Guidelines range after applying the upward adjustments discussed above. The parties agreed that Martin's leadership role in the offense justified "*[a]t least* a two level enhancement." Plea Agr. ¶11.c. Probation's assessment that a three level enhancement is more appropriate because he was an "organizer, leader, manager, or supervisor of a criminal activity which involved five or more participants" is consistent with the evidence in this case and with the parties' stipulation. *See* PSR ¶ 30. Thus, the United States concurs that Martin's total offense level is 38.

This sentencing represents Martin's only criminal conviction in the United States. Thus, his criminal history category is I. However, this is not Martin's first criminal offense. He was convicted in British Columbia of cultivating marijuana in 1992, at age 20. PSR ¶ 37. He was convicted again of possessing marijuana in 1996, at age 24. PSR ¶ 38.

Martin thereafter progressed to much more serious and international drug trafficking offenses, and was charged in 1999 at age 27 with Conspiracy to Export

United States Sentencing Memorandum
US v. Colin Martin; CR08-244RSL - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Marijuana, Conspiracy to Traffic Marijuana, Possession of Crime Proceeds, and Laundering of Proceeds. He was not finally convicted and sentenced to 2.5 years' prison for that offense until June of 2007. PSR ¶ 39. The offense conduct in this case started sometime shortly thereafter, with the creation of the fake timber company and the purchase/lease of the two first helicopters. Thus, it appears likely that Martin was under some sort of court-sanctioned release at the time he entered committed the instant conspiracy.

In 2010, following his indictment in this case and while still on bond pending the appeal of his 2007 prison sentence, Martin was once again caught operating a "large sophisticated marijuana grow, containing 3,000 mature marijuana plants, in an underground bunker on the defendant's property." PSR ¶ 40. He was sentenced to 24 months' custody for this, fourth drug conviction. None of these convictions score any points because they were all outside the United States. Thus, at criminal history category I, Martin's applicable range is 235 to 293 months' imprisonment.

### E. Sentencing Recommendation

The United States respectfully requests that the Court impose a sentence of 96 months' imprisonment, which obviously is well below the low end of the applicable range (235 months). Any sentence of imprisonment must be followed by four years' supervised release. The United States will be unable to collect any fine, so there is no point imposing one. The United States respectfully suggests that this sentence is appropriate in light of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to afford adequate deterrence to criminal conduct." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(B).

A review of pertinent Section 3553(a) sentencing factors, below, supports the recommended sentence.

United States Sentencing Memorandum
US v. Colin Martin; CR08-244RSL - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(1) <u>Nature and circumstances, and seriousness of the offense</u>

Colin Martin was a leader in a highly-organized, long-running conspiracy that was responsible for the transportation of enormous quantities of cocaine, marijuana, and MDMA in both directions over the international border between United States and Canada. His transportation operations involved using a fake timber company, at least three different helicopters, and spanned both sides of the border. Defendant and his co-conspirator co-leaders, to achieve their goal of enhancing their own wealth, were blind to the societal harm they, and others like them, caused in both countries. Even long after the conspiracy ended, an extremely violent environment engulfed many of their communities, as evidenced by the murder of co-defendant Jeremy Snow and his girlfriend in February of 2013, following his release to Canada after service of his sentence in this same matter. *See* PSR ¶ 10. Even if one discounts Martin's boasts to the DEA agent that he had "people that want to ship as far as florida, texas chicago and NY as well as several other places" (*sic*) and that he had the "ability to control 70% of the work that comes out of BC and what comes into BC," his role as a leader in the criminal underworld of cross-border drug trafficking was indisputably significant. *See* Bates 002628, text message dated November 15, 2009  9:53:09 AM.

Predictably, the low-level workers who flew Martin's helicopters and "muled" the loads of drugs bore a disproportionate degree of the consequences for Martin's and his co-leaders' conduct. While Martin apparently moved on relatively quickly in 2009-2010 from helicopters full of marijuana and cocaine to an underground marijuana bunker, his pilot lost his entire life and future. Ross Legge, one of the couriers paid to drive the 83 kilograms of cocaine to Martin's helicopter for smuggling back to Canada was sentenced to 120 months' custody. According to the Bureau of Prisons inmate records website, Legge was not released from prison until late 2015. He is over 60 years old.

(2) <u>History and characteristics of the defendant</u> – At the time Martin acted as a leader of this conspiracy, he was not a young man just emerging from a chaotic and abusive childhood. Rather, Martin was already a fully mature 35 or 36 years old

United States Sentencing Memorandum
US v. Colin Martin; CR08-244RSL - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

convicted felon with three priors for drug offenses. He was a seasoned entrepreneur who had opened and operated several businesses, first fitness centers, then a shake and shingle business, and finally "operating a gravel pit" while the conspiracy was ongoing. PSR ¶ 71-72. He had been in a committed relationship for over a decade and had, at that time, two children. At some point, Martin must be held to an adult standard of conduct notwithstanding his difficult origins. The United States suggests that by 2008-2009, after apparently failing to learn from three prior convictions and associated opportunities to reflect on his choices, Colin Martin was no longer simply acting out based on childhood trauma.

Avoiding criminal responsibility for this offense for nearly ten years provided Martin with enormous opportunities denied to many of the low-level workers. Martin's family grew, and he got married. He built a huge house for his family. He established an employment history. He did volunteer work, and – with the notable exception of the marijuana cultivation offenses he committed in 2010 – he appears to have avoided new criminal charges. Martin offers many of these recent accomplishments as justification for a lower sentence. The United States suggests that while such facts must be considered, the Court should not ignore the fact that Martin's role as a "hands-off" leader, who paid others to take the real risks and suffer the more immediate consequences for his benefit, are what allowed him these opportunities.

(3) <u>Need to promote respect for the law, provide just punishment for the offense, and afford adequate deterrence</u>

This conspiracy involved a huge quantity of drugs and was geographically vast. By all indications, it was also extremely profitable. Moreover, the most culpable participants, including Martin, were able to delay any punishment for years. A significant term of incarceration is necessary both to send a deterrent message and to promote respect for the law of the United States.

United States Sentencing Memorandum
US v. Colin Martin; CR08-244RSL - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(4) <u>Need to protect the public from further crimes</u>

Martin's current statements of remorse, if true, suggest that he might not present a high risk of re-offending this time around. On the other hand, it is difficult to characterize a person with Martin's history of re-offending in the past as "low risk."

(5) <u>Kinds of sentences available, and any necessary educational or vocational training or other special care</u>

Martin's PSR suggests no need for special care or training. He will be eligible to seek a treaty-based transfer back to Canada before long and, thereafter, is likely to gain early release. Pursuant to federal regulation, the Bureau of Prisons will give Martin credit for all of his well-documented time spent in Canadian custody in connection with this case as long as it was not already credited toward another criminal sentence. Accordingly, the Court does not need to make any special adjustments or sentencing recommendations in this regard.

(6) <u>Need to avoid unwarranted sentence disparity among similarly situated defendants</u>

The pilots and couriers working to move the drugs to and from Martin's helicopters were sentenced to prison terms ranging from 18 months to 120 months. The variation within this wide range was based primarily on a particular defendant's degree of (or lack of) cooperation, and variations in offense conduct. Among Martin's closer cohort, this Court sentenced the MDMA chemist, Serrano, to 36 months' imprisonment, which was significantly lower than the United States recommended. More recently, this Court sentenced Sean Doak, the leader of the drug distribution side of the scheme (as opposed to Martin's transportation side), to a term of 84 months' imprisonment. These sentences are fundamentally not comparable to Martin's, however, for reasons that will be discussed at the sentencing hearing. However, even if Sean Doak's sentence were comparable, as the leader of an equivalent, independent arm of the conspiracy, Colin Martin should not receive a sentence any lower than Doak's 84-month term.

United States Sentencing Memorandum
US v. Colin Martin; CR08-244RSL - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In the middle, Wayne Coates was sentenced to 60 months' imprisonment. He was a low-level worker who was caught transporting one single, MDMA load for the conspiracy. Notwithstanding Martin's proffered mitigation, the United States finds it impossible to justify imposing a sentence upon Martin that is equal to the sentence imposed upon Coates. Such a sentence would create an undue and inexplicable sentencing disparity that undermines respect for the United States criminal justice system.

(7) <u>The sentencing range as established by the Sentencing Commission</u>

As discussed above, the United States agrees that the range established by the Sentencing Guidelines for Martin's offense is 235 to 293 months' imprisonment.

In light of these statutory sentencing factors, the United States respectfully suggests that a sentence of 96 months is sufficient to address the mandatory statutory sentencing factors discussed above, and to avoid unwarranted disparity among co-conspirators in this case, but not greater than necessary.

DATED this 22nd day of June, 2018.

Respectfully submitted,

ANNETTE L. HAYES
UNITED STATES ATTORNEY

*s/ Sarah Y. Vogel*
SARAH Y. VOGEL
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101
Telephone: 206-553-2074
Fax: 206-553-4440
E-mail: Sarah.Vogel@usdoj.gov

United States Sentencing Memorandum
US v. Colin Martin; CR08-244RSL - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2018 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).

> s/Karen Wolgamuth
> KAREN WOLGAMUTH
> Paralegal
> United States Attorney's Office
> 700 Stewart Street, Suite 5220
> Seattle, Washington 98101-1271
> Phone: (206) 553-5050
> FAX:   (206) 553-4440
> E-mail: karen.wolgamuth@usdoj.gov

United States Sentencing Memorandum
US v. Colin Martin; CR08-244RSL - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970